

# THE ATTORNEY GENERAL
# OF TEXAS

JIM MATTOX
ATTORNEY GENERAL

September 13, 1990

Honorable Charles W. Chapman
Criminal District Attorney
Hays County Courthouse
Suite 208
San Marcos, Texas   78666

Opinion No. JM-1220

Re:  Competitive bidding for
a county vehicle maintenance
building  (RQ-1746)

Dear Mr. Chapman:

You inform  us  that in  the  fall of  1988,  a  county
vehicle maintenance building was  constructed at the  direc-
tion of a county commissioner who made verbal contracts with
vendors on the project.  You add that the vendors were  paid
by the county auditor with  funds from the maintenance  line
item of  the commissioner's  precinct budget  following  the
commissioner's  approval  of  the   claims.   The  cost   of
construction was  in excess of $10,000.

You ask whether a county must award a contract for  the
construction of a vehicle maintenance building on the  basis
of competitive  bids  when  no statute  other  than  section
271.024 of  the Local  Government  Code appears  to  require
competitive bidding.  You also ask as a preliminary question
whether section 271.024 itself requires competitive  bidding
on the contract.  You  do not ask, and  we therefore do  not
consider, whether under  the facts you  describe the  county
commissioner, acting alone,  was authorized  to execute  the
contract or contracts  in question.  See generally  Attorney
General Opinion JM-892 (1988) and authorities cited therein.
Neither do you question  the payment of  the vendors on  the
apparent approval of only the commissioner who ordered  that
the construction take place, rather than on the approval  of
the entire  commissioners court.   This opinion  accordingly
will address only your specific questions concerning section
271.024 of the Local Government Code.

## I. Does Local Government Code section 271.024 require counties to award contracts for the construction of public works on the basis of competitive bidding?

Chapter 271 of the Local  Government Code is a  revision
and  compilation  of  several  former  civil  statutes  that
prescribe  the  purchasing  and  contracting  authority   of

municipalities, counties, and certain other local governments. Subchapter A of chapter 271 is the Public Property Finance Act, formerly article 2368a.2, V.T.C.S. The subchapter is by its terms applicable only to acquisitions of personal property. See Local Gov't Code §§ 271.004, 271.005. Subchapter B, of which section 271.024 is a part, governs competitive bidding on certain public works contracts. Subchapter C was formerly V.T.C.S. article 2368a.1 and is known as the Certificate of Obligation Act of 1971. Local Gov't Code § 271.041. Subchapter D authorizes local governments to purchase items through the State Purchasing and General Services Commission. Id. § 271.082. Subchapter Z contains miscellaneous provisions relating to purchasing and the awarding of contracts by local governments that are not pertinent to this opinion.

### A. Local Government Code section 271.024 and its relationship to competitive bidding

Section 271.024, the provision that prompts your question, provides the following:

> If a governmental entity is required by statute to award a contract for the construction, repair, or renovation of a structure, road, highway, or other improvement or addition to real property on the basis of competitive bids, and if the contract requires the expenditure of more than $10,000 from the funds of the entity, the bidding on the contract must be accomplished in the manner provided by this subchapter [subchapter B of chapter 271].

"Governmental entity" is defined to include a county, a municipality, a common or independent school district, a special district or authority created under article III, section 52, or article XVI, section 59, of the constitution, a hospital district or authority, a housing authority, or an agency of the aforementioned entities. Local Gov't Code § 271.021.

Subchapter B, entitled "Competitive Bidding on Certain Public Works Contracts," is the descendant of former V.T.C.S. article 2368a.3. Originally enacted in 1979, that statute also provided that the competitive bidding procedures described in the act were applicable to contracts for the enumerated public works if the governmental entity awarding the contract was required by another statute to award the contract on the basis of competitive bids. Acts

1979, 66th Leg., ch. 770, at 1901. Subchapter B prescribes procedures for the advertisement for bids, the opening of bids, and the award of the resulting contract. See Local Gov't Code §§ 271.025 - 271.027. It also stipulates that its provisions do not affect a contract awarded pursuant to the Professional Services Procurement Act, V.T.C.S. art. 664-4. Id. § 271.022. A home rule charter in conflict with the terms of the subchapter prevails over subchapter B, and contracts awarded in violation of the subchapter are void. Id. §§ 271.023, 271.028.

You conclude that the competitive bidding procedures prescribed by subchapter B of chapter 271 are triggered only when a statute other than section 271.024 requires the governmental entity to award a contract for projects described in section 271.024 on the basis of competitive bidding, and the contract involves the expenditure of more than $10,000 of the entity's funds. The language of the section provides clear support to your conclusion. An opinion of this office, however, suggests that section 271.024 may itself be sufficient to require competitive bidding on a construction contract. A review of that opinion is necessary.

### B. Attorney General Opinion JM-505 and public works construction contracts

Attorney General Opinion JM-505 (1986) concluded in part that the competitive bidding requirements of the County Purchasing Act, then codified as article 2368a.5, V.T.C.S., did not apply to contracts for public works construction. In reaching this conclusion, it was said that article 2368a.3, the predecessor to subchapter B of chapter 271, "expressly governs competitive bidding on public works contracts." Attorney General Opinion JM-505, at 2. This statement, though technically correct, was made without elaboration and without specific reference to the language of section 271.024. More importantly, the opinion mistakenly suggests that section 271.024 itself mandates competitive bidding on public works contracts. To avoid further confusion, we should here emphasize that the procedures described in subchapter B are, by its plain terms, applicable only when a separate statute requires the

contracts for the enumerated projects  to be awarded on  the basis of competitive bids.[1]

Your reading  of section  271.024  is buttressed  by  a recently enacted  provision of  the Local  Government  Code, section 271.029, which states that an officer or employee of a governmental entity commits an offense if he intentionally or knowingly  makes  or authorizes  separate  purchases  "to avoid the competitive  bidding requirements  of the  statute that requires a contract described by Section 271.024 to  be awarded on the basis of competitive bids."  Accordingly, the threshold question,  i.e.,  whether  section  271.024  alone requires a county to award  a contract for the  construction of a county  vehicle maintenance  building on  the basis  of competitive bids, may be answered  in the negative.  To  the extent Attorney General  Opinion JM-505 suggests  otherwise, it should be disregarded.  Attorney General Opinion  JM-505 is relevant  to your  question for  other reasons  as  well,

---

1.  Attorney General  Opinion JM-505  is not  the  only authority which, if read  without reference to the  specific language of section 271.024, might generate confusion  about the nature of  the provision.   In his treatise  on the  law governing counties and special  districts, Brooks makes  the following observations about section 271.024:

> The first modern  competitive bidding statute,  enacted in 1917, was  amended in 1931  to apply only  to public works projects; this limitation was dropped  in 1947.  A 1979 statute  [former V.T.C.S. art.  2368a.3, now subch. B  of Local Gov't  Code ch. 271],  specifically applicable to  public works contracts,  requires that counties  . . .  follow  specified bidding  procedures in connection with the construction or  repair of any 'structure,' roadway, or any 'other improvement or addition  to real property.'  (Footnotes omitted.)

35 D. Brooks, County and Special District Law § 18.24 (Texas Practice 1989).  In isolation,  this passage might lead  the reader to erroneously conclude  that section 271.024 is  the sole authority to consult  when considering not merely  what competitive bidding  procedures  are  to  be  followed,  but whether competitive bidding  for a  particular public  works contract is required at all.  As this opinion  demonstrates, the express  language  of  section  271.024  precludes  this result.

which will  be discussed  in greater  detail later  in  this opinion.

## II. Does a separate statute require public works construction contracts to be awarded by counties on the basis of competitive bidding?

Our answer to  your preliminary question  does not  end our inquiry.  Under section 271.024 a separate statute  must impose a competitive bidding requirement on the awarding  of a contract for the construction of public works by a county. Otherwise the procedures outlined in subchapter B of chapter 271 are not triggered.  You contend that no statute  imposes a competitive  bidding requirement  on county  public  works construction  contracts  in  general.   However,  as  the remainder of  this opinion  will explain,  we believe,  contrary to Attorney  General Opinion JM-505,  that the  County Purchasing Act applies to  such contracts and requires  that they be awarded pursuant  to the competitive bidding  procedures prescribed by  that act  rather than  subchapter B  of chapter 271.

### A. The absence of a general statutory competitive bidding requirement expressly applicable to county public works construction contracts

You argue that no statute other than the Certificate of Obligation Act of 1971 currently requires a county to  award a contract for the construction of public works on the basis of competitive bids, and  that statute requires  competitive bidding only  in the  event certificates  of obligation  are issued to  fund contracts  of more  than $5000.  See  Local Gov't Code §§ 271.045(a)(1) (certificates of obligation  may be issued for the construction of any public work),  271.054 (competitive bidding  requirement).  The  provisions of  the Public Property Finance Act, subchapter A of chapter 271, do not apply to a contract for the construction of improvements to  real  property,  even  though  such  structures  may  be characterized  in  the  contract  as  "personal  property." Attorney General Opinion JM-800 (1987).  Thus, you  conclude that unless a  county issues certificates  of obligation  on the construction project,  the bidding procedures  described in subchapter B are inapplicable.

You attribute this deficiency to an amendment to former V.T.C.S. article 2368a, relevant  portions of which are  now codified as chapter 252 of the Local Government Code.  Prior to 1985,  section 2  of  article 2368a,  also known  as  the Bond and Warrant Law  of 1931, provided  that no county  was authorized to make any contract calling for the  expenditure

of more than $5000 in county funds without first submitting
the proposed contract to competitive bids. This requirement
was deleted in 1985. Acts 1985, 69th Leg., ch. 505, § 2, at
2091-92 (Senate Bill 802). The contracting provisions of
the statute thereafter were applicable only to cities. You
conclude that this action resulted in the repeal of the only
general statutory provision that requires county construc-
tion contracts to be awarded on the basis of competitive
bids. Our research has revealed no other statute that,
prior to 1985, would have generally required competitive
bidding on county construction contracts.

### B. The enactment of the County Purchasing Act and its effect on the award of construction contracts

During the same legislative session in which article
2368a was amended, the County Purchasing Act was enacted as
article 2368a.5, V.T.C.S. Acts 1985, 69th Leg., ch. 641, at
2377 (Senate Bill 807). It is now codified as subchapter C
of chapter 262 of the Local Government Code, sections
262.021 through 262.035. Senate Bill 802, the bill amending
the Bond and Warrant Law to make its contracting provisions
applicable only to cities, contained a separate section
tentatively restoring coverage of its competitive bidding
provisions to counties. Acts 1985, 69th Leg., ch. 505, § 4,
at 2094. This provision was expressly made contingent upon
Senate Bill 807, the County Purchasing Act, not becoming
law. Id. Because Senate Bill 807 was ultimately enacted,
section 4 of Senate Bill 802 never took effect, and counties
were therefore not made subject to the competitive bidding
requirements imposed by section 2 of the Bond and Warrant
Law.

Senate Bill 807, meanwhile, contained a provision
tentatively removing counties from the scope of section 2 of
the Bond and Warrant Law. Acts 1987, 69th Leg., ch. 641,
§ 2, at 2379. The amendment to the Bond and Warrant Law was
expressly made contingent upon the failure of the legisla-
ture to enact Senate Bill 802. Id. § 12, at 2384. The
continuing applicability of the competitive bidding re-
quirement of the Bond and Warrant Law to counties hinged
upon the success or failure of Senate Bill 807. The two
bills thus were carefully and deliberately tied to one
another, and it therefore clearly appears that the legisla-
ture intended the provisions of the County Purchasing Act to
replace the repealed portions of the Bond and Warrant Law.

The legislative history of the County Purchasing Act
indicates that the overriding goal of the legislature was to
provide uniformity and certainty in the laws governing the

acquisition of supplies, materials, equipment, and stationery by counties. There apparently was no intention to make changes in the laws governing the award of public works construction contracts. However, by the amendment of the Bond and Warrant Law the legislature inadvertently removed the only general competitive bidding requirement for county public works construction contracts. This action by default presented the unlikely prospect that construction contracts could be awarded without resort to competitive bidding.[2]

As we will explain shortly, we think the language of the County Purchasing Act supports the conclusion that its provisions were intended to replace the repealed portions of article 2368a. Attorney General Opinion JM-505, however, concluded that the terms of the County Purchasing Act do not apply to public works contracts except insofar as the acquisition of "high technology items," separately defined in the act, may be considered public works under other statutes. Given the far reaching implications of this conclusion coupled with a determination that county construction contracts are not otherwise subject to a general competitive bidding requirement, it is appropriate to reevaluate Attorney General Opinion JM-505.[3]

---

2. By comparison, the Certificate of Obligation Act of 1971 still requires counties to award public works construction contracts financed with bonds or certificates of obligation on the basis of competitive bids. Local Gov't Code § 271.054. Thus, the amendment of the Bond and Warrant Law should not be viewed as a departure from the strong public policy favoring competitive bidding.

3. This is not the first time we have had occasion to reconsider Attorney General Opinion JM-505. A brief submitted in connection with Attorney General Opinion JM-1027 (1989) urged us to overrule the earlier opinion. The latter opinion dealt with the purchase of road emulsion by a county engineer appointed pursuant to V.T.C.S. article 6702-1. Because the purchase was determined not to be a public works contract, we declined to reconsider the ruling of Attorney General Opinion JM-505. Since your statement of facts stipulates that a contract for the construction of a structure on real property is involved, see Local Gov't Code § 271.024, we must now confront the issue left unanswered by Attorney General Opinion JM-1027.

## III. Attorney General Opinion JM-505 and its construction of the County Purchasing Act

Attorney General Opinion JM-505 was generated by a perceived conflict between the bonding provisions of the County Purchasing Act and V.T.C.S. article 5160. The primary concern was not with the competitive bidding aspects of public works construction contracts, or the ramifications the opinion would have on competitive bidding. Article 5160 requires prime contractors on public works contracts for more than $25,000 awarded by the state, a county, or other political unit to execute statutory performance and payment bonds. The statute prohibited a governmental entity from requiring a bond on contracts for less than $25,000. Section 12 of the County Purchasing Act, now Local Government Code section 262.032, authorized a county to require a bidder to furnish a bid bond in a specified form and sum. It also required a successful bidder or offeror on a contract exceeding $50,000 to provide a performance bond. The bid bond requirement of section 12 was expressly made applicable to contracts "for the construction of public works," regardless of the amount of the contract. V.T.C.S. art. 2368a.5, § 12(a) (repealed, now codified as Local Gov't Code § 262.032).

The apparent conflict between the two statutes was resolved by concluding that the County Purchasing Act did not apply to public works contracts generally, the language of section 12 notwithstanding. Two grounds were offered in support of this conclusion. We have already examined one of the arguments in support of the conclusion, i.e., that article 2368a.3 governs competitive bidding for public works construction contracts. Apparently, this conclusion was based on the assumption that article 2368a.3 alone was sufficient to require competitive bidding on such contracts. A review of the language of the statute as it existed at the time Attorney General Opinion JM-505 was written and as it now exists as section 271.024 of the Local Government Code discloses the error of that assumption.

The other argument offered in support of the conclusion was that the term "item," employed throughout the statute, did not encompass construction contracts. "Item" was defined as "any service, equipment, good, or other tangible or intangible personal property," including insurance and "high technology items." V.T.C.S. art. 2368a.5, § 2(3) (now see Local Gov't Code § 262.022(5)). The opinion acknowledged that construction work could be characterized as a "service" in some circumstances, but concluded that in

ordinary usage, the term was not applied to public works construction contracts.

In order for the bid bond language of section 12 of the County Purchasing Act to have complete effect, it was necessary to give meaning to the phrase "contract . . . for the construction of public works." Attorney General Opinion JM-505 resolved this dilemma by referring once again to the definition of "item." It was noted that the term included "high technology items." "High technology item" was separately defined as

> a service, equipment, or good of a highly technical nature, including: data processing equipment and software and firmware used in conjunction with data processing equipment; telecommunications, radio, and microwave systems; electronic distributed control systems (including building energy management systems); and technical services related to these items.

V.T.C.S. art. 2368a.5, § 2(4) (now see Local Gov't Code § 262.022(4)). The opinion surmised that the legislature included such work and articles in the definition of "item" to avoid the possibility that such matters would be excluded from the scope of the act. The opinion also gave meaning to the "public works" language by observing that some of the work described in the definition of "high technology item" could be considered "public works" under other statutes. Hence, the opinion concluded that the "public works" language in section 12 referred only to "high technology" installations that might be classified as public works under other statutes.

Attorney General Opinion JM-505 also attempted to give meaning to the 1985 enactments that resulted in both the removal of counties from the purview of the Bond and Warrant Law and the addition of the County Purchasing Act. However, rather than viewing the enactment of Senate Bills 802 and 807 as evidence of the comprehensiveness of the County Purchasing Act, it accepted the legislation as support for its conclusion that the act did not apply to public works construction contracts. It noted that the amendment to the Bond and Warrant Law required successful bidders on city public works contracts to execute performance bonds in accordance with article 5160, whereas the County Purchasing Act contained no similar requirement. The opinion concluded that a narrow interpretation of the "public works" language

in section 12 of the County Purchasing Act would minimize direct conflict between the two statutes.

Once again, however, this reading of the County Purchasing Act depended heavily on the incorrect assumption that article 2368a.3 (now subchapter B of Local Government Code chapter 271) imposed an independent public works competitive bidding requirement on counties and all other governmental entities subject to the statute.

The interpretation given the County Purchasing Act in Attorney General Opinion JM-505 was probably consistent with legislative intent, at least as it related to county purchases. However, since it appears that the legislature may have been unaware of the complete effect of the amendment to the Bond and Warrant Law, it would have been appropriate to consider whether the legislature intended to free counties from the obligation to comply with competitive bidding when awarding construction contracts. It seems clear that the legislature did not intend to accomplish this by the enactment of the County Purchasing Act. Had Attorney General Opinion JM-505 taken this fully into account, we think it would have given the purchasing act a different reading.

## A. Applicability of the County Purchasing Act to construction contracts

Upon further inspection, we believe it was erroneous to place so much reliance on the definition of "item" in Attorney General Opinion JM-505. We also think it was incorrect to conclude that the application of the County Purchasing Act is solely contingent upon whether the particular acquisition is for an "item" as specifically defined in the act. A review of other provisions of the County Purchasing Act reveals that while the term "item" is specially defined in the act, it is not a rigid, inflexible concept. The definition therefore should not limit the reach of the County Purchasing Act where there is a clear indication in the language of the act that it should apply to particular procurements. This point is made manifest by other provisions of the act.

### 1. Section 262.024 of the Local Government Code

Section 262.024 provides, in part, that a "contract for the purchase of any of the following _items_" is exempted from the competitive bidding requirement established by section 262.023 if the commissioners court grants the exemption:

(1) an item that must be purchased in a case of public calamity if it is necessary to make the purchase promptly to relieve the necessity of the citizens or to preserve the property of the county;

(2) an item necessary to preserve or protect the public health or safety of the residents of the county;

(3) an item necessary because of unforeseen damage to public property;

(4) a personal or professional service;

(5) any work performed and paid for by the day, as the work progresses;

(6) any land or right-of-way;

(7) an item that can be obtained from only one source, including:

    (A) items for which competition is precluded because of the existence of patents, copyrights, secret processes, or monopolies;

    (B) films, manuscripts, or books;

    (C) electric power, gas, water, and other utility services; and

    (D) captive replacement parts or components for equipment.

In the absence of an exemption granted by the commissioners court, the acquisition of each of the enumerated articles or services would be subject to the competitive bidding procedures of the County Purchasing Act, despite the fact that they do not fall neatly within the definition of "item" provided in section 262.022.

## 2. Section 262.0275 of the Local Government Code

Further proof is found in section 262.0275 of the Local Government Code, originally enacted in 1987 as an amendment to article 2368a.5. See Acts 1987, 70th Leg., ch. 722, § 5, at 2598. It authorizes a governmental entity to take into account the safety record of a bidder under certain

specified conditions. Those conditions relate primarily to the issues of notice and fairness to bidders. See Acts 1989, 71st Leg., ch. 1, § 58, at 66 (conforming 1987 amendment to Local Gov't Code format). The caption to the bill enacting what is now section 262.0275 reveals the legislature's understanding of the scope of the County Purchasing Act:

> An act relating to safety standards for construction projects and consideration of safety records when awarding bids on construction projects.

Acts 1987, 70th Leg., ch. 722, at 2597.

Significantly, the amendment was accomplished without changing the definition of "item." This indicates that the legislature believed both that the definition was broad enough to include construction services and that the act applied generally to construction contracts. If it had not held these beliefs, we doubt it would have amended the act to allow consideration of a contractor's safety record. The addition of section 262.0275 therefore should not be viewed as an expansion of the County Purchasing Act, but merely a clarification of its scope.

Accordingly, we believe construction work may reasonably be characterized as a "service" for purposes of the County Purchasing Act, thereby bringing such work within the definition of "item" and preserving a general competitive bidding requirement for construction contracts.[4] We also conclude that Attorney General Opinion JM-505 was in error when it determined that the County Purchasing Act does not apply to public works construction contracts; it is hereby overruled to the extent it conflicts with this opinion.

In answer to your specific question, we conclude that the County Purchasing Act requires a county to award a contract for the construction of a vehicle maintenance building on the basis of competitive bids. This answer, however, raises an additional issue. Because both the County Purchasing Act and subchapter B prescribe competitive

---

4. The bill enacting section 262.0275 also amended subchapter B of chapter 271 to allow for the same consideration of safety records under its provisions. See Local Gov't Code § 271.0275.

bidding procedures, it becomes necessary to determine whether a county must award a public works contract in accordance with the terms of either the County Purchasing Act or subchapter B, or whether the County Purchasing Act simply triggers the procedures set forth in subchapter B.

## V. Does the County Purchasing Act or subchapter B of chapter 271 govern competitive bidding for public works construction contracts?

Two provisions of the Code Construction Act resolve this issue. Section 311.025(a) of the Government Code provides that in the event two statutes enacted at the same or different sessions of the legislature are irreconcilable, the statute latest in date of enactment prevails. Section 311.026, meanwhile, admonishes us to construe a general code provision and a conflicting special provision so that both may be given effect, if possible. If the conflict is irreconcilable, the special provision is treated as an exception to the general provision unless the general provision is the later enactment and the manifest intent is that the general provision prevail.

The County Purchasing Act and subchapter B both apply to contracts exceeding $10,000, subchapter B applying specifically to public works contracts. The two acts differ, however, in several important respects, such as in terms of the timing and content of competitive bidding notices. Compare Local Gov't Code § 262.025 with id. § 271.025. The acts also impose different procedures for the opening and modification of bids prior to award of the contract. Compare id. § 262.026 with id. § 271.026. Of course, the County Purchasing Act contains a bid bond and performance bond requirement while subchapter B does not. See id. § 262.032. The County Purchasing Act authorizes a property tax paying citizen of the county to enjoin performance of a contract made in violation of the act; subchapter B, though, provides that a contract made in violation of its provisions is void. Id. §§ 262.033, 271.028. These differences cannot, in our opinion, be readily reconciled, and we must therefore determine which of the statutes shall govern county public works construction contracts.

The County Purchasing Act was enacted in 1985; V.T.C.S. article 2368a.3 was enacted in 1979. The County Purchasing Act is also the more general provision. However, with our previous discussion of the legislative history and subsequent amendment of the act in mind, we believe that the manifest intent of the legislature is that the County

Purchasing Act govern the award of construction contracts by a county to the exclusion of subchapter B. Accordingly, we believe the competitive bidding procedures prescribed by the County Purchasing Act in sections 262.023 through 262.032 of the Local Government Code prevail over the provisions of subchapter B of chapter 271 of the Local Government Code insofar as the latter provisions relate to counties.[5]

Recent legislation amended subchapter B to allow a county with a population of 2.2 million or more to require a successful bidder to perform at least 25 percent of the work under a contract and to establish financial criteria for surety companies that provide payment and performance bonds. Local Gov't Code § 271.025(e) (as added by Acts 1989, 71st Leg., ch. 1019, § 2, at 4115). The legislative history of the amendment indicates that it was directed primarily at out-of-state construction contractors who do business with Harris County. See Public Hearing on H.B. 1059, before the House Comm. on County Affairs (March 7, 1989) (testimony of Mr. Jack Watkins, Assistant County Engineer, Harris County) (tape available through House Technical Services). The amendment to subchapter B would suggest that the legislature believes its provisions remain applicable to counties. However, it must also be noted that the same legislation amended both the County Purchasing Act, see Local Gov't Code § 262.025(d), and the Certificate of Obligation Act, see id. § 271.055(e), to provide identical authority to a county with a population of 2.2 million or more. Furthermore, the only county that may presently take advantage of the provision apparently awards construction contracts pursuant to the County Purchasing Act. See Testimony of Jack Watkins, supra. The amendment of subchapter B, in our opinion, represents more a case of overly precise and unnecessary drafting than a conscious attempt to bring county construction contracts under the umbrella of subchapter B.

We would also note that our conclusion also applies to conflicts between the County Purchasing Act and V.T.C.S. article 5160. Since the County Purchasing Act contains

---

5. Public works construction contracts awarded pursuant to the Certificate of Obligation Act of 1971, Local Government Code sections 271.041 to 271.065, are not affected by our answer because such contracts are expressly removed from the scope of the County Purchasing Act. Local Gov't Code § 262.023(b).

provisions relating to bid and performance bonds, see Local Gov't Code § 262.032(a), (b), we think these provisions should prevail over article 5160, which provides for performance bonds but not bid bonds. Since the County Purchasing Act makes no provision for payment bonds, a county must require contractors to provide such bonds pursuant to article 5160.

### S U M M A R Y

A county is required to award a contract for the construction of a county vehicle maintenance building and public works pursuant to the terms of the County Purchasing Act, Local Government Code sections 262.021 through 262.035. The provisions of subchapter B of Local Government Code chapter 271 do not apply to such contracts. Attorney General Opinion JM-505 (1986) is overruled to the extent of conflict with this opinion.

Very truly yours

J I M   M A T T O X
Attorney General of Texas

MARY KELLER
First Assistant Attorney General

LOU MCCREARY
Executive Assistant Attorney General

JUDGE ZOLLIE STEAKLEY
Special Assistant Attorney General

RENEA HICKS
Special Assistant Attorney General

RICK GILPIN
Chairman, Opinion Committee

Prepared by Steve Aragon
Assistant Attorney General